IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DELBERT L. GEORGE                                                    PLAINTIFF

v.                      Civil No. 14-3042

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Delbert George, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed his applications for DIB and SSI on November 30, 2011, and December 6, 2011, respectively. He alleged an onset date of August 2, 2008, due to degenerative disk disease ("DDD") of the cervical and lumbar spine, osteoarthritis of the right knee, shoulder pain, numbness down his legs, myalgias, and depression. Tr. 92, 106, 112, 327-347. The Commissioner denied his applications initially and on reconsideration. At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on March 14, 2013. Tr. 348-381. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 44 years old and possessed a tenth grade education. Tr. 92, 351. He had past relevant work ("PRW") experience as a carpenter and machine operator. Tr. 93, 356.

On August 28, 2013, the ALJ concluded that the Plaintiff's DDD of the cervical and lumbar spine, osteoarthritis of the right knee, and myalgias were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 15-16. He determined that the Plaintiff could perform light work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 16. With the assistance of a vocational expert ("VE"), the ALJ found the Plaintiff could perform work as a storage facility clerk, photo finishing counter clerk, furniture rental clerk, processed film cutter, box corner cutter, and wood heel beveler. Tr. 19.

The Appeals Council denied the Plaintiff's request for review on March 28, 2014. Tr. 3-8. Subsequently, Plaintiff filed this action. ECF No. 1. This matter is before the undersigned by consent of the parties. ECF No. 7. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 12.

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that

supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and

work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.     Discussion:**

On appeal, Plaintiff contends that the ALJ made the following errors: 1) failed to include his shoulder impairment as a severe impairment; 2) failed to develop the record with regard to his depression; 3) placed excessive weight on the opinion of Dr. Wilkins, which is contradicted by the record as a whole including the observations of range of motion restrictions and pain observed by both emergency room physicians and Dr. Brownfield; and, 4) lacked substantial evidence to support his determination that the Plaintiff was not disabled.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**A.     Severe Impairments:**

In his first argument, the Plaintiff contests the ALJ's determination that his shoulder impairment was not severe. A severe impairment is an impairment that significantly limits the individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(b), 416.920(c), 416.921(b); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181; *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). Thus, an impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; *Bowen v. Yuckert,* 482 U.S. 137, 153, 158 (1987) (O'Connor, J., concurring). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish

that his impairment or combination of impairments are severe. *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Buckner v. Astrue*, 646 F.3d 549, 556-557 (8th Cir. 2011) (although the claimant was diagnosed with depression and anxiety, substantial evidence supported the ALJ's finding that depression and anxiety were not severe).

In support of his argument, the Plaintiff cites to a medical record from November 2008 that mentions chronic shoulder pain. Tr. 183. However, at that time, the doctor noted a medical history of shoulder pain. The Plaintiff made no active report of shoulder pain. Further, x-rays of his shoulder conducted in February 2010 showed "mild" degenerative changes in the acromioclavicular joint, resulting in a diagnosis of degenerative joint disease ("DJD"). *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

In January 2012, Plaintiff underwent a general physical exam, which revealed a decreased range of motion in his shoulders. Tr. 188-192. The doctor assessed moderate limitations with regard to prolonged positioning, kneeling, stooping, bending, reaching overhead, and lifting. However, the Plaintiff made no further complaints of shoulder pain until Dr. Andrew Carver Wilkins conducted a consultative examination in May 2013. Tr. 298-301. Plaintiff then reported weakness in both arms and occasional numbness in his hands. However, he also indicated that he had last worked as a roofer in 2012. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work). Dr. Wilkins found him able to lift and carry objects without limitations, and sit, stand, and walk for a full workday.

After reviewing the entire record, the undersigned finds substantial evidence to support the ALJ's severity ruling. The evidence makes clear that the Plaintiff's DJD was mild, treated conservatively, and inconsistently treated. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). As such, we cannot say the ALJ erred in failing to find it severe.

      **B.**     <u>**Duty to Develop the Record**</u>**:**

Plaintiff next contends that the ALJ failed to fully and fairly develop the record with regard to his depression. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, he is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). Thus, this court should only remand for further development of the record when the evidence does not provide an adequate basis for determining the merits of a disability claim. *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010); *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010).

At the outset, we note the Plaintiff did not allege depression on his disability application. *See Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (the claimant did not allege a psychiatric

6

basis for disability in reports completed for the agency); *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007) (the claimant did not allege mental impairment in her disability applications completed for the agency); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (the fact that the claimant did not allege depression in her application was significant).  He did testify to being depressed due to his physical impairments.  However, he sought out no treatment for depression related symptoms until 2013.  In April 2013, he reported poor sleep, fatigue, and decreased energy that appears to have been related to him caring for his paralyzed wife.  Tr. 288-292.  Although the doctor urged him to start an antidepressant, Plaintiff waited 10 days before agreeing to do so.  Tr. 277-279.  At that time, he was diagnosed with depression/major depression, single episode, and prescribed Fluoxetine (generic for Prozac).  *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990) (a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis).  Although Plaintiff reported taking Celexa in July 2013, he sought out no further treatment.  *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).  Moreover, he failed to seek out treatment from a mental health professional. *See Kirby,* 500 F.3d at709 (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).  Further, in May 2013, he denied mood changes, depression, suicidal ideation, nervousness, anxiety, and difficulty concentrating.  Tr. 298-301.

In September 2013, ER doctors treated Plaintiff for sedation secondary to taking seven Klonopin and drinking tea with "miracle grow" in it.  Tr. 317-324.  At this time, he denied suicidal ideations, reporting he read an online article suggesting "miracle grow" was good for him.  At that time, Plaintiff also tested positive for marijuana and admitted using it once or twice per week.

7

Given the Plaintiff's lack of consistent treatment for his alleged mental impairment and failure to seek out formal mental health treatment, the undersigned finds no violation of the ALJ's duty to develop the record. The evidence of record is adequate.

### C.     Opinion Evidence:

The Plaintiff also contends that the ALJ improperly weighed the opinions of the consultative examiners. Specifically, he alleges that the ALJ erred in according significant weight to Dr. Wilkin's opinion, while according less weight to Dr. Brownfield's opinion. We disagree.

To fully consider and evaluate this issue, we must also evaluate the ALJ's RFC determination. RFC is an individual's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. RFC is a medical question that requires some medical evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945. However, the ALJ is responsible for assessing a claimant's RFC. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. §§ 404.1546(c), 416.946(c).

In so doing, the ALJ will consider medical and other evidence of a claimant's impairments, including medical opinions. 20 C.F.R. §§ 404.1513, 404.1527(a)(2), 416.913, 416.927(a)(2); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner). It is ultimately the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. *See Wagner*, 499 F.3d at 848. In weighing the medical opinions, the ALJ considers the following factors: (1) examining relationship; (2) treatment relationship, including the length of treatment relationship, frequency of examination, and nature and extent of the

8

treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors, such as the amount of understanding that the physician has regarding the agency's disability program and requirements.  20 C.F.R. §§ 404.1527(d), 416.927(c).

Plaintiff reported being involved in an automobile/bicycle accident at age 9.  Tr. 354.  As a result, he suffered a broken right hip and leg.  Although there are no records to substantiate his allegations, Plaintiff claims to have suffered a crush injury to his leg causing the right leg to be shorter than the left.  Tr. 188-192.  In 2006, the Plaintiff also reported injuring his shoulders.  Further, he injured his neck at work in May 2008.  Tr. 132-141.

On November 2, 2008, the Plaintiff sought treatment in the ER for chronic lower back pain allegedly resulting from three herniated disks.  Tr. 181-186, 234-236.  An examination revealed pain in the spinous process of the paraspinous muscle with muscle spasms in the lower lumbar region.  He reported no radicular symptoms.  The ER doctor diagnosed Plaintiff with chronic back and shoulder pain and administered Toradol and Norflex injections.

On February 24, 2010, fifteen months later, the Plaintiff returned to the ER with recurrent back and left shoulder pain.  Tr. 175-180.  He reported no relief from Hydrocodone.  Moreover, he denied radiculopathy, numbness, tingling, and weakness.  X-rays of his shoulder revealed mild degenerative changes in the acromioclavicular joint.  Accordingly, the doctor diagnosed him with chronic back pain and DJD.

On August 2, 2010, Plaintiff presented with complaints of back pain exacerbated by lifting his wife.  Tr. 156-160.  His wife had suffered a stroke resulting in paralysis.  An examination revealed a normal range of motion with diffuse, lateral lumbar tenderness.  The doctor diagnosed him with lumbar sprain and prescribed Hydrocodone and Robaxin.

On September 7, 2010, Plaintiff again sought emergent treatment for his lower back pain. Tr. 143-151. He reported that bending over and standing exacerbated his pain. An examination revealed some restriction in range of motion of his lower extremities due to pain, diffuse lumbar tenderness, and sacral tenderness. The doctor prescribed Hydrocodone, but refused to prescribed pain medication in the future. He recommended the Plaintiff visit his primary care physician or a pain specialist.

On January 24, 2012, Plaintiff underwent a general physical exam with Dr. Shannon Brownfield. Tr. 188-192. He recounted problems with lower back pain since the 1990s and a history of scoliosis and herniated disks. Plaintiff also complained of leg pain related to the crush injury he sustained as a child, as well as pain in his knees and shoulders. An examination exposed a decreased range of motion in his shoulders, knees, cervical spine, and lumbar spine. And, although able to squat/arise from a squatting position, this proved painful. However, Dr. Brownfield found no evidence of muscle spasm or joint deformity, and noted a normal gait and coordination. He diagnosed lower back pain and bilateral shoulder and knee pain, concluding that the Plaintiff would be moderately limited with regard to prolonged positioning, kneeling, stooping, bending, reaching overhead, and lifting.

On September 2, 2012, the Plaintiff presented in the ER due to swelling in his right knee. Tr. 226-233. He had reportedly jumped off a tress in the past, causing his right knee to buckle. As a result, his knee was now giving out. He also complained of chronic back pain. On examination, the doctor noted right knee tenderness, a decreased range of motion due to pain, and tenderness in the lumbar spine. X-rays of the knee showed chronic-appearing spurring along the medial femoral condyle and a metallic screw in the tibia about 10 centimeters from the knee joint level. Further, x-rays of his lumbar spine showed mild degenerative changes at L5-S1 level with

end plate spurring and sclerosis and progression of degenerative disk change at the L5-S1 level. The doctor diagnosed DJD and knee sprain. He then prescribed Lortab and Naproxen.

On November 25, 2012, Plaintiff returned to the ER with continued complaints of lumbar pain. Tr. 212-219. Records suggest that his chronic condition was aggravated by a stretching injury to the right lumbar. He indicated that the pain was primarily on his right side, radiating down into his hip and leg. The doctor prescribed Norflex.

On December 9, 2012, another episode of back pain sent him back to the ER. Tr. 200-211. He reported bilateral lumbar flank pain, on the left more than right. He also complained of pain in the groin with associated nausea and vomiting. An examination revealed no tenderness to the back, but moderate left lower quadrant abdominal tenderness. The doctor also noted small non-incarcerated inguinal hernias bilaterally. Further, a pelvic CT scan showed a left kidney stone. However, there are no further records documenting treatment for either the hernias or recurrent kidney stones.

On April 2, 2013, Plaintiff established care at the Boston Mountain Rural Health Center ("BMRHC"). Tr. 288-292. He complained of lower back pain radiating into his legs, poor sleep, and decreased energy. Plaintiff reported caring for his paralyzed wife. The doctor diagnosed him with chronic pain syndrome, lower back pain/lumbago, fatigue, nicotine dependence, depression, and cervicalgia. He ordered lab tests and an MRI of the lumbar and cervical spine, and prescribed Flexeril, Mobic, and Norco. The doctor also urged him to start an antidepressant, and the Plaintiff agreed to "think about it."

On April 10, 2013, Plaintiff returned to BMRHC. Tr. 280-286. Lab tests revealed elevated liver functions, so a hepatic function panel and acute hepatitis panel were ordered. The MRI of his lumbar spine showed edema involving the L5 inferior endplate and superior endplate of the

11

S1, most likely representing some instability, edema and early modic changes, and mild central canal stenosis at the L4-5 level secondary to ligamentous hypertrophy facet joint and disk disease. Results from the cervical MRI revealed central canal and right neural foraminal stenosis at the C5-6 level and left neural foraminal narrowing at the L4-5 level, but no herniation.

On April 12, 2013, Plaintiff followed up at BMRHC.  Tr. 277-279.  Based on lab results, the doctor diagnosed him with chronic hepatitis C, lower back pain with lumbago, chronic pain syndrome, and depression/major depressive disorder, single episode.  He then prescribed Fluoxetine.

On April 29, 2013, Plaintiff returned to BMRHC.  Tr. 274-276.  An examination revealed a decreased range of motion in his back due to pain.  The doctor again diagnosed lower back pain with lumbago, chronic hepatits C without mention of hepatic coma, and DJD/osteroarthritis.  He directed the Plaintiff to discontinue the Mobic and Norco, prescribing Hydrocodone and refilling his prescription for Flexeril.

On May 29, 2013, Dr. Andrew Carver Wilkins, performed a consultative examination.  Tr. 298-301.  Again, the Plaintiff reported a history of lower back and neck pain.  He indicated that activity and head movement exacerbated his neck pain.  Further, Plaintiff reported occasional radiation of the pain to the back of his head, weakness in both of his arms with occasional numbness in both hands, and constant lower back pain with occasional radiation down the back of his right leg into his ankle.  However, aside from fatigue, Plaintiff reported no problems with walking and no numbness or sensory issues in his lower extremities.  Further, he admitted to being independent with his activities of daily living, requiring no assistive devices, and smoking marijuana regularly.  Plaintiff also reported last working as a roofer in 2012, after his alleged onset date.  An examination revealed tenderness to palpation in the right trapezius region, but no range

of motion deficits. Dr. Wilkins diagnosed myalgia/myositis. He found the Plaintiff capable of sitting, walking, and standing for an entire workday and lifting/carrying objects without limitation. Further, Dr. Wilkins opined that the Plaintiff could hold a conversation, respond appropriately to questions, and carry out/remember instructions.

Dr. Wilkins also completed an RFC assessment. Tr. 302-304. He found the Plaintiff unlimited with regard to sitting, standing, walking, lifting, and carrying. However, Dr. Wilkins limited Plaintiff to work requiring only occasional climbing, balancing, kneeling, crouching, and crawling.

On July 11, 2013, Plaintiff returned to the ER, reporting a new diagnosis of hepatitis C and complaining of right upper quadrant abdominal pain. Tr. 305-314. He indicated that he would be scheduled to see a gastroenterologist as soon as he was approved for Medicaid. Although he was unsure how he contracted hepatitis C, the doctor noted multiple tattoos. And, Plaintiff listed current medications to include Celexa, Flexeril, Hydrocodone, and Vicoprofen. The doctor concluded that his pain was likely secondary to the stretch of the capsule of his liver. He recommended a viral load check and possible treatment for hepatitis C. The doctor also administered IV fluids, Morphine, Zofran, and Protonix, and released him with orders to increase his fluid intake.

On September 22, 2013, Plaintiff returned to the ER after taking Klonopin and drinking tea made with "Miracle Grow." Tr. 317-324. He had reportedly read an article listing the benefits of "Miracle Grow." Interestingly, lab tests were positive for marijuana use, and his family was concerned that he may have also taken some Flexeril. The Plaintiff, however, denied taking Flexeril. He also denied suicidal ideations. Therefore, the doctor diagnosed sedation secondary

to Klonopin and perhaps Flexeril. He kept him for observation, and then released him home without complications.

As for activities of daily living, the undersigned was unable to locate a function report in the file. However, the Plaintiff did report caring for his paralyzed wife and performing activities of daily living without assistance. Further, none of the doctors noted a need for any assistive devices. The Plaintiff also reported the ability to work as a roofer until at least 2012. This suggests to the undersigned that his impairments, although severe, are not disabling. *See Goff,* 421 F.3d at 793 (8th Cir.2005) (absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work).

The ALJ gave some weight to the assessments of Drs. Wilkinson and Brownfield. After reviewing the entire record in this case, the undersigned finds substantial evidence supporting the RFC assessment and the weight assigned to the experts by the ALJ.

As previously discussed, the evidence simply does not bear out a severe shoulder impairment. The mere fact that Dr. Brownfield's exam revealed some range of motion limitations in the shoulder does not mandate a finding otherwise. The remainder of the records reveal a normal range of motion in the shoulders. And, there are no records to indicate that the Plaintiff consistently reported shoulder pain. Thus, we do not find that the evidence supports Dr. Brownfield's limitation concerning overhead reaching.

However, we do find that Dr. Brownfield's assessment of moderate lifting and carrying limitations is supported by substantial evidence. Repeated examinations have revealed tenderness and range of motion deficits in the cervical and lumbar spine. X-rays and MRIs documenting degenerative changes and mild central canal and foraminal stenosis in both the lumbar and cervical

spine further validate these limitations. Thus, it appears clear to the undersigned that the Plaintiff, although limited, is capable of performing light work.

As for Dr. Wilkinson's assessment of no limitations whatsoever, we do not find it to be supported by the overall record. However, his conclusion that the Plaintiff is able to sit, stand, and walk for a full workday is supported by the evidence. And, given that both doctors agreed on the postural limitations, substantial evidence supports those as well. In accordance, we find substantial evidence to support the ALJ's determination that the Plaintiff could perform light work with postural limitations. Further, we find no error in the weighed assigned to the medical evidence.

### D.      Substantial Evidence:

Plaintiff's final argument is a generalized argument that substantial evidence does not support the ALJ's disability determination. As addressed above, we find substantial evidence to support the ALJ's decision at steps one through four. The last and final step requires the ALJ to obtain testimony from a vocational expert as to the positions, if any, an individual can perform given their limitations. The ALJ submitted written interrogatories to a vocational expert who indicated the Plaintiff could perform work as a coulter and rental clerk, machine operator and tender, and fast food worker. Tr. 126-127. Because the hypothetical question posed to the vocational expert included all of the limitations the ALJ found to be supported by the evidence, the vocational expert's testimony provides substantial evidence to support the ALJ's determination that the Plaintiff is not disabled. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole). As such, the ALJ's decision will stand.

15

**IV.     Conclusion**:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed.  The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 17th day of July, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE